# Brink *et al.* *versus* Michael *et al.*

A release, "in consideration of the natural love and affection, which I have and bear to my son W. B. and his children, and toward the better maintenance and education of the same," unto W. B. forever, of lands of which W. B. was then in possession, "for himself during his natural life, and in trust for, and for the use of, his children, share and share alike" (the said W. B., being then a widower), passed to the said W. B. an estate for life only; and the trust was limited to his then children, and conveyed no interest to other children of a second marriage, subsequently contracted.

A release which operates by way of enlargement of estate, requires technical words of limitation in order to convey a fee.

ERROR to the Common Pleas of *Pike county.*

This was an ejectment by John Michael and others, the representatives of the children of William Brink by his first wife, against Laura C. Brink and others, the widow and children of the said William Brink, by his second marriage.

John Brink, being the owner of the premises in question, of which his son, William Brink, was then in possession under him, on the 15th September 1827, executed the following release, which was duly recorded:—

"Know all men by these presents, that I, John Brink, of Upper

Smithfield township, Pike county, and state of Pennsylvania, in consideration of the natural love and affection which I have and bear to my son William Brink, and his children, and toward the better maintenance and education of the same, and for other causes, have given, granted, bargained, sold and confirmed, and, by these presents, do remise, release for ever unto Wm. Brink (for himself during his natural life, and in trust for, and for the use of, his children, share and share alike), all the farm (on which he now resides or) which was conveyed to me by Cornelius Cole, situate on the river Delaware, in the township aforesaid; together with all the appurtenances thereunto belonging—subject, nevertheless, to the yearly rent of one-fourth of all the grain, grass, fruit, sauces, and pasture, that shall be raised on said farm yearly and every year, during my life, if the same is by me demanded or by my assigns, and not otherwise.

"In testimony whereof I have hereunto set my hand and seal, the 15th day of September 1827.

                                   JOHN BRINK.      [SEAL.]
Signed, sealed, in presence,
    JOHN B. ROCKWELL,
    D. M. BRODHEAD."

At the time of the execution of this conveyance, William Brink was a widower, with ten children, who were represented by the plaintiffs below. He subsequently married again, and died in 1853, leaving a widow, the said Laura C. Brink, and six other children, the issue of his second marriage, who were the other defendants below. From the time of his decease, his widow and her children remained in possession of the premises.

On the 17th June 1841, John Brink, by his will, devised the premises in question to the sons and daughters of William Brink by his first wife, in fee; subject to a charge of $2500; with a clause expressly excluding the children of the second marriage.

The defendants' counsel requested the court to charge the jury as follows:—

1. That the deed or conveyance of the 15th of September 1827, from John Brink to William Brink, passed a fee to said William.

2. That the reference made in said deed or conveyance, to the conveyance from Cornelius Cole to said John Brink, enlarged the estate granted commensurate with the terms of the conveyance from said Cole to said John Brink, which last-named conveyance created an estate in fee; and that the said John having a fee, by relative words conveyed that fee to his son William.

3. That said deed or conveyance of 15th of September 1827, may be pleaded and used by defendants as a grant, a release, or as a confirmation, at their election; and that, if the jury believe

[Brink *et al. v.* Michael *et al.*]

from the evidence, that William Brink was in possession of the premises at the time said deed or conveyance was executed and delivered, it passed a fee to him, notwithstanding the omission of the word heirs therein.

4. That, if said conveyance of 15th September 1827, ought to be considered as a limitation of trust, and not an original conveyance at common law, equity would and should supply the omission of the formal words of limitation to the heir.

5. That said deed or conveyance of 15th of September 1827, may be treated as a covenant to stand seised to uses, and be considered as the covenant of John Brink, to stand seised to the several uses mentioned in the deed. By which mode of conveyance, the legal estate passed out of John Brink, to the several persons to whom the uses were declared. In the first place, the legal estate was vested in William Brink, for life, with remainder in fee, or for life, to his children, who were living at the date of said deed or conveyance, subject, not to an absolute divestment, but to an alteration or lessening by the birth of other children; at each subsequent birth, the remainder opening to let the child in, and so "*toties quoties.*" And the residue of the legal estate (provided the remainder after the death of William vested in his children only for life) resulted to the grantor.

6. At the death of William Brink, his children by his second wife were tenants in common for life, or in fee, with the children by his first wife.

7. That there is not sufficient evidence of an ouster of the plaintiffs by the defendants, to enable the plaintiffs to recover, as against those of the defendants, who are children of the said William Brink, nor against the widow of said William Brink, if he had an estate in fee.

The court below (BELL, P. J.) overruled these points, and instructed the jury to find for the plaintiffs subject to the opinion of the court upon the main question in the cause. To which charge the defendants excepted; and, the court having subsequently entered judgment for the plaintiffs below, upon the verdict, the defendants removed the cause to this court, and here assigned for error, the refusal of the learned judge to charge as requested by them.

*W. Davis* and *M. H. Jones*, for the plaintiffs in error.—The conveyance of the 15th September 1827, vested a fee simple in William Brink. It is to be construed most strongly against the grantor, and in favour of the grantee. Its consideration is natural love and affection to William, his son, and William's children. Its object is for the better maintenance and education of the children, and for other causes. The uses named by it were not intended to be limited to his natural life. If the trust required

[Brink *et al. v.* Michael *et al.*]

the absolute property, a fee simple would pass without words of limitation: *Smith on Real and Personal Property* 102.

The words heirs or successors need not be in the identical deed of grant, or other mode of assurance, by which the estate is granted or conveyed: 2 *Preston on Estates* 2; *Shepherd's Touchstone* 101; 1 *Inst.* 96; Lytle *v.* Lytle, 10 *Watts* 259. The reference in the deed, to the conveyance of Cornelius Cole to the grantor, enlarges the estate granted commensurate with the terms of the conveyance from Cole. The intention of the parties to create a fee cannot be doubted; and the court will effectuate this intention: Hollingsworth *v.* Fry, 4 *Dall.* 347.

In releases that enure by way of *mitter le droit*, the word heirs is not necessary to create a fee simple: Gray *v.* McCune, 11 *Harris* 447; 4 *Cruise Dig.* 86; 2 *Thomas' Coke* 377, note a. 1. Sometimes releases shall enure *de mitter*, and vest the right of him which makes the release in him to whom it is made; as if a man be disseised, and he releases to his disseisor all his right: *Litt.* 274 *a*, § 466; 2 *Thomas' Coke* 373. A man who has merely the occupation of lands, without any estate, is capable of a release. The rightful owner may treat him as a trespasser or disseisor: 2 *Thomas' Coke* 406. A confirmation is of a nature very similar to a release: 2 *Id.* 416–17. If I be disseised, and I confirm the estate of the disseisor, he hath a good and lawful estate in fee simple, albeit, in the deed of confirmation, no mention be made of his heirs, because he had a fee simple at the time of the confirmation: 2 *Id.* 425–6.

Let us consider the estate conveyed by the deed of the 15th September 1827, as a limitation of uses, or a limitation of trust. The English learning on this subject has been for the most part inapplicable here, since the Act 28th May 1715. The 4th sect. of that act gives to all deeds duly recorded, the same force and effect for giving seisin and possession, as deeds of feoffment with livery of seisin: *Brightly's Purd.* 229. By a feoffment with livery of seisin, a use may be raised in any one in whose favour it is expressly declared by the deed, without a consideration expressed; and therefore the same thing may be done here by a bargain and sale, or any other form of conveyance duly recorded: Sprague *v.* Woods, 4 *W. & S.* 192; 4 *Cruise Dig.* 118.

*J. M. Porter* and *M. Goepp*, for defendants in error.—So essentially necessary is the word *heirs*, that no estate of inheritance, either in fee simple or fee tail, can *by deed* be conveyed without it: *Reeves on Domestic Relations* 456; Vanhorn's Lessee *v.* Harrison, 1 *Dall.* 137; *Co. Litt.* 41 a; Gray *v.* Packer, 4 *W. & S.* 17; 2 *Bl. Com.* 104, 115, 121.

If the deed of 15th September 1827, be treated as a release, it cannot enure by way of *mitter le droit*, which has place only

[Brink *et al. v.* Michael *et al.*]

between disseisee and disseisor. William Brink was in possession, but not in adverse possession, and a release to him could only operate by way of *enlargement of estate:* 2 *Bl. Com.* 324, 325; *Co. Litt.* 270 a; 4 *Cruise* 97.

The object of the Act of 1715 was to give, without the aid of feudal ceremonies, the legal seisin for lawful purposes: Desilver's Estate, 5 *Rawle* 111; Dunwoodie *v.* Reed, 3 *S. & R.* 445; Sprague *v.* Woods, 4 *W. & S.* 192.

The opinion of the court was delivered by

WOODWARD, J.—We cannot doubt that the *cestuis que trust*, in the deed of John Brink to his son William, dated the 15th September 1827, were the then living children of William by his first wife. William was a widower, living on the farm, conveyed by the deed, with his children, and his father meant to give him the benefit of it "towards the better maintenance and education of the children," but there is not a word on the record to indicate that William was contemplating a second marriage, or that his father had any thought of providing for the issue of such a marriage. The natural love and affection which constituted the consideration of the deed, and the maintenance and education which were among the objects it aimed to promote, had reference, and in the nature of things must have had exclusive reference, to the children then in being; they were before the grandfather's eyes, and were most manifestly the objects of his bounty.

In the construction of wills the rule is, that *children*, as a class of devisees, are to be ascertained at the time distribution is to be made. Accordingly, an immediate gift to children (that is, a gift to take effect in possession immediately on the testator's decease) comprehends those living at the time of his death, and those only, among which, however, a child in *ventre sa mere* would be included; but, if a particular estate or interest be carved out, with a gift over to the children of the person taking that interest, such gift will embrace not only the objects living at the testator's death, but all who may subsequently come into existence before the period of distribution: 2 *Jarman* 75.

Though this rule does not admit of a formal application to deeds, except perhaps where contingent interests are created, yet the principle of it may be readily applied to the deed under consideration here. The delivery of the deed was distribution. The grantees were already in possession of the farm, and the profits enured to their benefit from the moment the deed was delivered. When we adopt that period, therefore, as the time for ascertaining who belonged to the class of grantees mentioned in the deed, we do not violate the rule of construction which obtains in devises, but proceed according to the spirit of it.

All rules of construction, whether applied to wills or deeds, have for their object the bringing out of the intention of the

makers, and that, when ascertained legitimately, is the meaning of the instrument. Tried by all the appropriate tests, we have no doubt, the deed of 15th September 1827, was intended for the benefit of William Brink's children by his first wife, and not by his second.

We are not called on to declare what that interest was, and all argument on this subject was beside the point. Whether it was a use, which the statute executed in the children in fee; or a mere trust, which terminated with the life of William Brink; or, after his death, a life estate in the children; or, whether the children of the first wife are to take under the grandfather's will; are questions which do not necessarily arise upon the record, and are not, therefore, to be decided at present.

By way, however, of averting the effect of that construction which counsel anticipated we would be obliged to give to the words of the deed, touching the class of children intended, it is earnestly contended that William Brink took an estate in fee simple. This position must be considered; for, if it can be maintained, it lets in the second family of children in common with the first. William Brink was a purchaser, and having died intestate, the farm, if he held it in fee, descended to all his children alike.

The argument in support of this position is necessarily a desperate one, for it is in direct conflict with the plain and unambiguous language of the instrument. It is a grant " unto William Brink *for himself during his natural life,* and in trust for the use of his children, share and share alike." There are no words of inheritance or perpetuity. Now, whatever room for debate there is about the interest which the *children* took under such a conveyance, it seems impossible to doubt that the first taker had a life estate and no more. What words could have been more aptly chosen to create such an estate? and by what rule of construction are we to torture those fitly chosen words into the creation of a fee simple?

It is said in the first place, that the word *heirs* is not necessary to a fee in a trustee.

True it is, that if land be conveyed to trustees, in trust to sell and convey in fee simple, they take a fee without words of limitation : Neilson *v.* Lagow, 12 *How.* (U. S.) 98.

And when, to support the objects of a trust, it is necessary that the trustee should have a fee in himself, courts of equity will treat him as possessing it, provided they contravene thereby no express provision of the instrument creating the trust.

But here there was no power given to the trustee to sell or convert the farm, and no purpose of the trust was declared, to support which he needed any greater estate than that created by the words used. It was an improved and productive farm that was conveyed, and it was simply by use and occupation that it was to be contributory " towards the better maintenance and education of the

[Brink *et al. v.* Michael *et al.*]

children." This was the object or purpose of the trust, and a life estate was all-sufficient for this purpose.

It is next said, that the reference made to the conveyance of Cornelius Cole to John Brink, carried a fee over to William. Undoubtedly, John Brink had a fee in himself by virtue of the Cole conveyance, but when he conveyed to his son William he referred to the Cole conveyance, not for the purpose of defining the tenure of William, or the quantum of estate granted, but simply for the purpose of identifying and locating the farm. His words were, "All the farm which was conveyed to me by Cornelius Cole, situate on the river Delaware, in the township aforesaid," &c. The citations from Preston and the Touchstone prove that a fee may be created, where such is the intention, by reference to another instrument; but they do not prove, what is contended for here, that a deed, plainly creating a life estate, can be construed a conveyance of the fee, because, to fix the outlines of the property, a deed is referred to which did pass a fee simple estate in the land. This argument is not worthy of more consideration.

It is next urged, that as William was in possession, the conveyance may operate by way of release, and vest a fee without the word heirs. As the tenant of his father, William was capable of receiving a release, by way of enlarging the estate already in him; but releases which operate by enlargement of estate, require the same technical words of limitation as feoffments or grants : 4 *Cruise on Real Property* 81. The very example which this author puts is this, if a lessor releases to his lessee for years all his right in the land, this will only pass an estate for life.

There are certain kinds of release, those which enure by way of *mitter le estate* and *mitter le droit*, by which a fee will pass without words of limitation; but the first of these obtains only between joint tenants or coparceners, and the last between disseisor, his heir or feoffee, and the disseisee. Judge Brink and his son stood in none of these relations, and it was a mistake to suppose that their transaction was subject to these principles of law.

The final suggestion is, that this deed may be construed as a covenant to stand seised to uses. Possibly it may, and if we were defining the estate of the children, it might be convenient to so consider it. But we are now on the question whether William took a fee simple, and it is not perceived that this suggestion has any relevancy to that question. As between the father and the son, the transaction was a simple conveyance of a life estate, and we cannot, on any of the grounds suggested, give it any other or greater effect.

The argument, then, that William took a fee, failing at all points, the case stands on the construction we have given to the word children, and it follows that the judgment below was properly rendered for the plaintiffs.

The judgment is affirmed.